## SNOW v. MASTICK et al.

### S. F. No. 2588; December 31, 1902.

#### 71 Pac. 165.

**Sale—What Constitutes.**—Defendant S., Son of Plaintiff, engaged with defendants M. and N. in working a mine, plaintiff agreeing to back his son for his share, and to send him either money or provisions to put in for his share, and, pursuant thereto, sent him provisions. Held, that there was no sale to the others, so as to make them liable therefor.

APPEAL from Superior Court, City and County of San Francisco; J. C. B. Hebbard, Judge.

Action by Louis T. Snow against Reuben Mastick and others. There was a judgment of nonsuit and plaintiff appeals. Affirmed.

I. F. Capman for appellant; Mastick, Van Fleet & Mastick for respondents.

PER CURIAM.—This action was brought to recover of defendants the sum of $353.74 for groceries and provisions alleged to have been sold and delivered by plaintiff to defendants at their instance and request. The defendant Snow is the son of the plaintiff. He was not served with summons, and did not appear in the case. At the close of plaintiff's evidence the defendants Mastick and Nahl moved for a nonsuit, which was granted, and judgment accordingly entered. This appeal is from the judgment, and the sole question is as to the ruling on the motion for a nonsuit.

After carefully examining the evidence, we think the court did not err in granting the nonsuit. The theory of plaintiff was that the merchandise was furnished to defendants at the request of each and all of them. The testimony offered was that of plaintiff and his son, one of the defendants here. The plaintiff is, and was at the time named in the complaint, engaged in the grocery business in the city and county of San Francisco. In October, 1897, the defendant Snow was engaged in the business of mining, with the other defendants, in a mine called the "Bull Dog," in Siskiyou county. The defendant Snow testified that he entered into the mining ven-

ture with the other defendants, and that his father, the plaintiff, agreed to pay his share; that, "after we had decided to take this property and try to work it, he agreed to back me in the proposition; . . . . that, in case we did not succeed in making a go of the property up there, my father was to assume the loss of my third." The plaintiff testified: "I expected to back my son to the extent of his interest in the concern." On October 1, 1897, before the goods in question were shipped, plaintiff wrote to his son, the defendant Snow, and in the letter said: "I have not seen Mr. Mastick yet. Your scheme is all satisfactory. You put your money in as fast as the others do. I can send you food and pay freight to Gazelle for your part. Your share would be about $17 per month, and I suppose you would use that much in grub. At any rate, you can call on me for your share as fast as each contributes, and have either cash or groceries." The following questions were asked of plaintiff, and the answers given as herein stated: "Q. And Mr. Mastick came to you, you say, and asked you to back your son up there, did he not? A. I expected to back my son to the extent of his interest in the concern. Q. And in conformity with that agreement you sent these goods to your son? A. Yes, sir. Q. You understood, did you not, that these goods were sent as payment of your son's interest in that concern? A. To such extent as he was interested in the property." Taking the evidence all together, it is clear that the intention to hold the defendants Mastick and Nahl was an afterthought of plaintiff.

The judgment is affirmed.